# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

DONALD R. VIOLETT                                                    PLAINTIFF

v.                                        CIVIL ACTION NO. 3:17CV-P531-TBR

CASEY DOWDEN et al.                                                 DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Donald R. Violett,[1] a prisoner presently incarcerated at Kentucky State

Reformatory (KSR), filed a *pro se* complaint (DN 1) alleging discrimination and constitutional

violations. Subsequent to the filing of the complaint, Plaintiff filed a "Motion to Amend

Complaint and Add Additional Defendants" (DN 7). In this motion, he seeks to add Correct-

Care Solution (CCS) as a new Defendant to this action, and he asserts claims of retaliation,

discrimination, and violations of the Eighth Amendment. Thereafter, Plaintiff filed a "Motion to

Name Specific Defendant And Submit Proof Of Retaliation" (DN 11). Therein, Plaintiff seeks to

add LPN Domalewski as a Defendant and asserts a claim of retaliation and a claim of deliberate

indifference as to Plaintiff's safety against this Defendant. Upon consideration, **IT IS**

**ORDERED** that Plaintiff's motions to amend (DNs 7 & 11) are **GRANTED**.

The complaint and amendments are before the Court for initial review pursuant to

28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on*

*other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will

---

[1] In the caption of the complaint, "Donald R. Violett, and Others Similar Situation" are listed as
Plaintiffs. The Court considers Donald R. Violett as the only Plaintiff as he is unable to
represent anyone other than himself. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir.
2002) ("Although 28 U.S.C. § 1654 provides that '[i]n all courts of the United States the parties
may plead and conduct their own cases personally or by counsel,' that statute does not permit
plaintiffs to appear *pro se* where interests other than their own are at stake."); *Gonzales v. Wyatt*,
157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be
represented by an attorney, but cannot be represented by a nonlawyer.").

allow the following claims to proceed: (1) the claim against Defendant Turner in her individual capacity alleging that she retaliated against Plaintiff by filing a disciplinary report; (2) the claim against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities alleging that they retaliated against Plaintiff by barring him from the law library and the use of computers to draft legal documents; (3) the claim against Defendant Domalewski in his individual capacity for retaliation by filing a false report; (4) the equal protection claim against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities; (5) the access-to-courts claim against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities; and (6) the Eighth Amendment claim against Defendant Domalewski in his individual capacity for deliberate indifference to Plaintiff's safety. Further, the Court will allow Plaintiff to amend the following three claims: (1) the claim brought under Title II of the Americans with Disabilities Act (ADA); (2) the retaliation claim regarding being placed in the Restricted Housing Unit; and (3) the Eighth Amendment claim regarding Plaintiff slipping and falling because he was denied use of his walker and assistance. The remaining claims will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff names four Defendants in his complaint and two additional Defendants in his amendments. He identifies the six Defendants as follows: (1) Casey Dowden, a Case Worker at KSR; (2) Teresa Turner, a Case Worker at KSR; (3) John Hall, a Unit Administrator at KSR; (4) Anna Valentine, a Deputy Warden at KSR; (5) CCS; and (6) Mr. Domalewski, an LPN with CCS. Plaintiff asserts claims of retaliation; claims under the Fifth, Eighth, and Fourteenth Amendments; and claims under the Americans with Disabilities Act (ADA). Plaintiff sues Defendants in their individual capacities. As relief, Plaintiff seeks monetary damages, an order

restraining Defendants from retaliating against him, restoration of his right to use program computers to prepare legal documents, and costs.

In his complaint, Plaintiff states that he is designated by the KSR "medical department to be handicap, having to use a rolling walker, at all times during the incidents" about which he complains. Plaintiff states that he uses the walker because of problems with numbness in his feet and legs and because he "is subject to falls, causing serious pain and suffering, and has had a heart attack and surgery." Plaintiff states that up until April 7, 2016, he was "involved in the work assignment program as an assigned legal aide, in the [KSR] legal office, having been in that program since 2006." Plaintiff asserts that because of his handicap, he is not to use the steps to the building where the KSR legal office is located, but he is to use "only the designated handicap door to enter or exi[t] that building, as the Plaintiff is subject [to] fall trying to carry the rolling walker up or down the steps." Plaintiff states that the KSR Fire & Safety Coordinator, Mr. Hillebrandt, gave Plaintiff a direct order to "use the designated handicap door to enter or exi[t] the building where the [KSR] legal office is located."

Plaintiff states that prior to April 6, 2016, he "had multiple problems with [KSR] staff locking the designated handicap door so handicap people could not enter or exi[t] the building where the [KSR] legal office is located." According to Plaintiff, when he tried to report to the KSR legal office on April 6, 2016, the "designated handicap door was locked." Plaintiff had to enlist someone to get a KSR staff member to unlock the door "so he and other handicap people could enter the building." The staff member who unlocked the door informed Plaintiff that she had been told to keep the door locked and that Plaintiff and others need to "use the regular door to enter the building." Shortly thereafter, Plaintiff states, he tried to exit the building to go to the canteen. According to Plaintiff, when he tried to do so, the "designated handicap door" was

locked, and he needed to get a staff member to open the door so he could exit. Again, according to Plaintiff, when he tried to return to the legal office, the same thing happened. Plaintiff states that locking the door violated KSR "post orders to keep the designated handicap door unlocked when there are handicap people in the building."

Plaintiff states that on April 7, 2016, he was transported to the University of Louisville Hospital for tests for heart problems. According to Plaintiff, when he returned to KSR he was called to the legal office and told that he "was released from his work assignment program because the Plaintiff complained about the designated handicap door being locked on April 6, 2016 four [4] times." Plaintiff states that when he tried to file a grievance about the locking of the handicap door on this same date, Defendant Turner "said she would issue a disciplinary report against [him] if he filed a grievance, as she had decided the designated handicap door was to stay locked at all times." Plaintiff states that he was not permitted to file a grievance until April 21, 2016. According to Plaintiff, on April 22, 2016, a disciplinary report was issued against him for using "disrespectful[] language toward staff when complaining about the designated handicap door being locked on April 6, 2016." According to Plaintiff, the disciplinary report was dismissed on April 24, 2016.

Plaintiff alleges that Defendant Turner and Defendant Hall worked 'in collusion to bar the Plaintiff from having access to the legal library so the plaintiff could work on his criminal case and prepare legal pleadings to file a collateral attack against Plaintiff's illegal conviction, causing the Plaintiff to miss deadline . . . ." Plaintiff states that Defendant Turner was replaced by Defendant Dowden "who then work[ed] in collusion with [Defendant] Valentine and [Defendant] Hall to remove specific computers from the KSR legal library so the Plaintiff could not prepare any typed legal pleadings collaterally attacking his criminal conviction . . . ."

According to Plaintiff, in June 2017, all legal work he had stored in a certain computer was destroyed so Plaintiff could not have copies; however, Defendants "permitted others to type, copy, their prepared legal pleadings and only the Plaintiff is not allowed to type on computers, because the Plaintiff is handicapped with mental illness issues." According to Plaintiff, Defendants "are working in the collusion to prevent the Plaintiff to participate in a program enjoyed by non-handicap or mental illness inmates." Plaintiff continues, "In short, the named Defendants are working in collusion with other inmates to stop the sex offenders from preparing legal pleadings while non-sex offenders enjoy the right to use program computers to prepare, type, copy legal work and this has caused irreparable injuries to the Plaintiff."

Plaintiff asserts that "[s]ex offenders are considered to have mental health issues." Plaintiff states that they receive mental health treatment and, if convicted after 1998, are required to complete the Sex Offender Treatment Program. According to Plaintiff, "[t]his is what makes a sex offender 'handicap' because he has a mental health illness issue." Plaintiff alleges that Defendants do "not give a sex offender the same legal aid assistance as a non-sex offender." Further, Plaintiff states that since Defendant Dowden replaced Defendant Turner, Defendants have "only hired non handicap people to work in the assigned programs as Legal Aides, grievance Aides, [and] legal clerks." Plaintiff alleges that Defendants are discriminating against him because he is handicapped by not allowing him to participate in state-run programs. Further, Plaintiff alleges that Defendants retaliated against him because he exercised his right to complain about an ADA violation about the lack of access to a building where a state-run program was conducted.

In Plaintiff's first amendment to the complaint (DN 7), he states that "Defendants and others retaliated [against him] by locking him up in Restricted Housing Unit (the Hole) and

taking the Plaintiff's walker away so he could not have any assisted way to walk or get around." Plaintiff states that he was placed in restricted housing on September 17, 2017. According to Plaintiff, the toilet in his restricted housing cell did not work, and he could not "use the toilet or clean himself" until September 19, 2017, when he was removed from the restricted housing cell "so staff could dry up the rain water and sewer water that was on the cell floor." Plaintiff represents that when he was instructed to return to his cell, he attempted to do so without the assistance of a walker or a staff member, and he "fell in water, hitting his head, elbow, and hip on steel bars and concrete floor." Plaintiff contends that this was an "act of delirate indifference and overt act of retaliation and discrimination to deny a handicap person assistance to walk without fear of additional injury."

According to Plaintiff, KSR staff called Defendant CCS "to give aid to Plaintiff because [he] was knocked out and bleeding from his right elbow." Plaintiff states that CCS staff was unable to put him in a wheelchair because he was "knocked-out and hurt in his back." Further, Plaintiff states that the door was too small for a wheelchair. According to Plaintiff, this was "[a]nother A.D.A. violation." Plaintiff continues by stating that CCS staff placed him on a back board, but dropped him back onto the concrete floor causing him additional injury. Plaintiff states that KSR staff then called the "KSR medical ambulance," and Plaintiff was transported to the hospital "[f]or proper medical care."

In this first amendment to the complaint, Plaintiff alleges the "named Defendants" retaliated and discriminated against him. He further asserts an Eighth Amendment violation alleging that the conditions in the restricted housing cell contributed to his fall and being dropped from the back board.

In Plaintiff's second amendment to the complaint (DN 11), he begins by stating that his prior allegations are "covered under [the] American[s] with Disabilities Act." He states that Defendants use "known 'hit-men' inmates to assault the Plaintiff, causing physical injury to Plaintiff then Defendants awards the hit-men for their actions." Plaintiff states that since the filing of his complaint, he was injured "when he was denied access to his rolling walker and fell." Further, he alleges he was dropped by a CCS employee "face-first into the concrete floor while Plaintiff was belly-handicapped and strapped to a back board, causing a neck, elbow and hip injury to the Plaintiff." Plaintiff continues,

> Now, in retaliation for filing this complaint, one of the [CCS] employees has filed a false report by not telling the truth why Plaintiff was injured. LPN Domalewski is not qualified to state if Plaintiff has internal injuries to the Plaintiff's neck, elbow or hip after LPN Domalewski did not report he dropped the Plaintiff while Plaintiff was strapped to the back board. KSR staff witnessed the deliberate indifference to the Plaintiff's medical care, and KSR-EMT staff told LPN Domalewski he was not qualified to move or try to transport the Plaintiff on a back board.

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 90 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the district court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. LEGAL ANALYSIS

### A. Claims Pursuant to Title II of the ADA

Plaintiff alleges that Defendants discriminated against him by denying him access to the law library and computers to draft documents. The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Title II of the ADA prohibits a public entity from discriminating against disabled

individuals and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined, in relevant part, as "any State or local government." 42 U.S.C. § 12131(1)(A). The Sixth Circuit has held that the ADA does not permit public employees or supervisors to be sued in their individual capacities. *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("[N]either the ADA nor the RA impose liability upon individuals."); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) ("[N]either the ADA nor the RA allows suits against government officials in their individual capacity."). Consequently, since Plaintiff brings his ADA claims against Defendants in their individual capacities, these claims will be dismissed.

Accordingly, claims brought pursuant to Title II of the ADA against Defendants in their individual capacities will be dismissed from this action.

However, "under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act]." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Court will allow Plaintiff an opportunity to amend his complaint to name Defendants in their official capacities as to the claim under Title II of the ADA, if he so chooses.

### B. Claims Pursuant to Title III of the ADA

Plaintiff alleges that Defendants discriminated against him by denying him access to the law library and computers to draft documents. Title III of the ADA prohibits discrimination in

places of public accommodation against persons with disabilities. 42 U.S.C. § 12182(a). Title

III of the ADA defines "public accommodation" as follows:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a Laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G) a terminal, depot, or other station used for specified public transportation;
>
> (H) a museum, library, gallery, or other place of public display or collection;
>
> (I) a park, zoo, amusement park, or other place of recreation;
>
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). Title III applies only to private entities operating public accommodations

and services. It expressly does not apply to public entities such as cities, counties, and states or

to the departments and agencies thereof.  *See* 42 U.S.C. §§ 12131(1), 12181(6); *see also Watson v. Cobb*, No. 14-1034-JDT-egb, 2015 WL 502314, at *3 n.7 (W.D. Tenn. Feb. 5, 2015) (Title III "expressly does not apply to public entities such as cities, counties, and states or to the departments and agencies thereof."); *Collazo v. Corr. Corp. of Am.*, No. 4:11CV1424, 2011 WL 6012425, at *4 (N.D. Ohio Nov. 30, 2011) ("A jail or prison facility does not constitute a place of 'public accommodation' as defined in the applicable statutory provisions."); *Wattleton v. Doe*, No. 10-11969-JGD, 2010 WL 5283287, at *2 (D. Mass. Dec. 14, 2010) (concluding that federal prison does not constitute a place of public accommodation under Title III of ADA).  Plaintiff complains about alleged discrimination in a state prison facility, an entity not covered by Title III.

Further, any claim for monetary relief under Title III of the ADA also is barred because only injunctive relief is available under Title III of the ADA.  *See Southwell v. Summit View of Farragut, LLC*, 494 F. App'x 508, 512 (6th Cir. 2012) ("Title III of the ADA provides only injunctive relief, not monetary damages to successful plaintiffs."); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."); *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir. 1999) (recognizing that Title III enforcement statute, 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a-3(a), does not include money damages); *Ajuluchuku v. Yum! Brand, Inc.*, No. 3:05CV826-H, 2006 WL 1523218, at *1 (W.D. Ky. May 23, 2006) ("[I]t is well established that Title III of the ADA does not provide for a private cause of action for damages.").

For these reasons, the claims brought against Defendants under Title III of the ADA will be dismissed from this action.

### C. Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) "there is a causal connection between elements one and two-that is, the adverse action was motivated, at least in part, by the plaintiff's protected conduct." *Id.* Plaintiff alleges four claims of retaliation.

### 1. Disciplinary-Report Claim

Plaintiff alleges that Defendant Turner filed a disciplinary report against him in retaliation for filing a grievance about the "handicap door" being locked. An inmate has a First Amendment right to file a grievance against prison officials. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, that right is protected only if the grievance is not frivolous. *Id.* "In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but 'only to the extent that the underlying claims ha[ve] merit.'" *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) (quoting *Herron v. Harrison*, 203 F.3d at 415).

Upon consideration, the Court will allow Plaintiff's claim alleging that Defendant Turner filed a disciplinary report against him in retaliation for filing a grievance to procced against Defendant Turner in her individual capacity.

### 2. Claim Regarding Being Barred from the Legal Library

Plaintiff asserts that Defendants Dowden, Turner, Hall, and Valentine barred him from access to the law library and use of the computers to prepare legal documents to collaterally

attack his criminal conviction in retaliation for complaining about the 'handicapped door" being locked.

Upon consideration, the Court will allow this claim to proceed.

### 3. Claim Regarding Being Placed in the Restricted Housing Unit

Plaintiff alleges that "[a]fter Plaintiff's complaint was filed, the named Defendants and others retaliated [against him] by locking him up in Restricted Housing Unit (the Hole) and taking the Plaintiff's walker away so he could not have any assisted way to walk or get around." Plaintiff states that he was placed in restricted housing on September 17, 2017. According to Plaintiff, the toilet in his restricted housing cell did not work, and he could not use the "toilet or clean himself" until September 19, 2017, when he was removed from the restricted housing cell "so staff could dry up the rain water and sewer water that was on the cell floor."

As to this action, Plaintiff states that "Defendants and others" were responsible for these alleged wrongful actions. Plaintiff does not state which Defendants were responsible, and he does not state how any Defendant was directly involved in these alleged wrongful actions. While the Court has a duty to construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for [his] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Federal Rule of Civil Procedure 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" To state a claim for relief, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 56 U.S. at 678. Plaintiff fails to state in the complaint the facts for seeking relief against any particular Defendant, and this claim against "Defendants and others" is therefore subject to dismissal.

Rather than dismissing this claim at this time, the Court will allow Plaintiff an opportunity to amend his complaint to name which specific Defendants were involved in these alleged actions and to describe the facts surrounding how each Defendant allegedly violated his rights.

### 4. Claim Against Defendant Domalewski Regarding Filing a False Report

Plaintiff alleges that in retaliation for filing this action, Defendant Domalewski filed a "false Report" in which he failed to state that he had dropped Plaintiff off the back board.

Upon consideration, the Court will allow this claim to proceed.

### D. Equal Protection Claim

Plaintiff asserts an equal protection claim against Defendants Dowden, Turner, Hall, and Valentine. He asserts that non-sex offenders are allowed access to the law library and computers to prepare legal documents, but that he, a sex offender, which he describes as a mental illness, was denied access to the law library and computers. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which essentially means that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

Upon consideration, the Court will allow the equal protection claim to proceed against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities.

## E. Access-to-Courts Claim

Plaintiff alleges that Defendants Dowden, Turner, Hall, and Valentine denied him access to the law library and computers to draft legal documents to prepare a collateral attack on his criminal conviction. Plaintiff further alleges that this denial caused him to miss a deadline in his case.

The courts have recognized repeatedly that there is no constitutionally protected right of access to a law library. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* (quotation omitted). However, prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right of access to the courts "is limited to direct criminal appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement." *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003). In order to state a claim for interference with access to the courts, a plaintiff must show an actual injury. *Thaddeus-X v. Blatter*, 175 F.3d at 394. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. at 351. "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal

claim." *Id.* (internal citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Furthermore, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Court held in *Christopher* that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Upon consideration, the Court will allow the access-to-courts claim to proceed.

### F. Claim Regarding Destruction of Legal Documents

Plaintiff also appears to be alleging a claim regarding the destruction of his legal documents. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post deprivation procedures are inadequate to remedy the deprivation. *Parratt v. Taylor*, 451 U.S. at 543-44; *see also Laubis v. Witt*, 597 F. App'x 827, 831 (6th Cir. 2015) ("[I]n order to proceed in federal court with a § 1983 claim for deprivation of property without due process, 'the plaintiff must attack the state's corrective procedure as well as the substantive wrong.'") (citation omitted). The law of this circuit is in accord. The Sixth Circuit held that "[i]n § 1983 damage suits claiming the

deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). The Sixth Circuit has further found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). The same rationale applies to claims under the Fifth Amendment Takings Clause; that is, no taking has occurred absent a showing that available remedies have been pursued and have failed to provide adequate compensation. *Hudson v. Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring).

As explained by Justice O'Connor,

> [A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause. The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings. The due process requirement means that Government must provide to the inmate the remedies it promised would be available. Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred. Thus, in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate. When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Id*. (citations omitted). Plaintiff has failed to demonstrate an inadequacy of state remedies in the case at bar.

Accordingly, the claim regarding the destruction of Plaintiff's legal documents will be dismissed.

### G. Conspiracy Claim

Plaintiff alleges that Defendants Dowden, Turner, Hall, and Valentine colluded together to deprive Plaintiff of his rights. The Court construes this as an alleged civil-conspiracy claim. Under § 1983 a civil conspiracy is "'an agreement between two or more persons to injure another

by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). In order to state a claim of conspiracy, Plaintiff must allege the elements that make up a conspiracy claim: that a single plan existed; that the alleged coconspirators shared in the general conspiratorial objective to deprive Plaintiff of his constitutional or federal statutory rights; and that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

A review of Plaintiff's complaint reveals that he has failed to meet the pleading standard needed to state a conspiracy claim. Plaintiff's complaint is completely devoid of factual matter that would allow the Court to draw a reasonable inference that the named Defendants engaged in a conspiracy to impermissibly deny Plaintiff his constitutional rights. Plaintiff provides no factual support of conspiracy other than the repeated recitation that these Defendants engaged in collusion. "The 'web of inference[s] is too weak' on the alleged facts to permit a finding, 'absent sheer speculation,' that [Defendants] shared . . . [an] unlawful objective." *Bazzi v. City of Dearborn*, 658 F.3d at 603 (quoting *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir. 2010)). The complaint does not contain sufficient factual matter that, if accepted as true, states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).

Accordingly, Plaintiff's § 1983 conspiracy claim will be dismissed.

## H. Claim Against Defendant CCS

Plaintiff has named CCS as a Defendant in this case. Plaintiff alleges that an employee of CCS, Defendant Domalewski, dropped Plaintiff while he was secured on a back board. He further alleges that CCS has refused him medical care.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). "[A] plaintiff must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987) *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

The same municipal-liability analysis applies to § 1983 claims against private corporations like Defendant CCS. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("'*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'") (quoting *Harvey v. Harvey*, 949 F. 2d 1127, 1129 (11th Cir. 1992)); *Detwiler v. S. Health Partners*, No. 3:16-cv-P343-DJH, 2016 WL

4083465, at *2 (W.D. Ky. Aug. 1, 2016) ("The Sixth Circuit has held that the analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation such as Southern Health Partners." ) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d at 818). CCS cannot be held liable on a respondeat superior basis for the actions of its employees. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001); *Ruley v. S. Health Partners*, No. 4:10-CV-P34-M, 2011 WL 2214998, at *4 (W.D. Ky. June 6, 2011). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Street v. Corr. Corp. of Am.*, 102 F.3d at 817; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x at 465 ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

Plaintiff has not alleged that any policy or custom of CCS caused his alleged harm. He makes a general statement that CCS refuses him medical care, but Plaintiff fails to connect this to any CCS employee or provide dates or facts surrounding such alleged occurrence. Further, he has not alleged that any inadequacy of its employees' training caused his alleged harm. Plaintiff's complaint appears to contain allegations of an isolated occurrence affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Defendant CCS, Plaintiff fails to establish a basis of liability against this entity and fails to state a cognizable § 1983 claim as to CCS.

Accordingly, CCS and the claims against it will be dismissed from this action.

# I. Eighth Amendment Claims

## 1. Claim Against Defendant Domalewski

Plaintiff alleges that Defendant Domalewski placed Plaintiff on a back board, which he was not qualified to do, and dropped Plaintiff face first into the concrete floor causing injury to his neck, elbow, and hip. Plaintiff asserts that Defendant Domalewski's actions violated the Eighth Amendment. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. at 526-27).

Upon consideration, the Court will allow the Eighth Amendment claim alleging deliberate indifference to Plaintiff's safety to proceed against Defendant Domalewski in his individual capacity.

## 2. Claim Regarding Slipping and Falling in Water

Plaintiff alleges that on September 19, 2017, after being removed from his cell for the water to be cleaned up, "KSR staff" instructed him to return to his cell without his walker or assistance. Plaintiff states that when doing so, he fell in water, was "knocked-out," and hurt his head, elbow, and hip. Plaintiff fails to state which Defendants, if any, were involved in these alleged wrongful acts. To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).

Rather than dismissing this claim at this time, the Court will allow Plaintiff an opportunity to amend his complaint to name which specific Defendants were involved in these

alleged actions and to describe the facts surrounding how each Defendant allegedly violated his rights.

## IV. ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1) The claims under Title II of the ADA brought against Defendants in their individual capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2) The claims under Title III of the ADA are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(3) The claim regarding destruction of legal documents is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(4) The conspiracy claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

(5) CCS and the claims against it are **DISMISSED** from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** as follows:

(1) The claim against Defendant Turner in her individual capacity alleging that she retaliated against Plaintiff by filing a disciplinary report will proceed;

(2) The claim against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities alleging that they retaliated against Plaintiff by barring him from the law library and the use of computers to draft legal documents will proceed;

(3)  The claim against Defendant Domalewski in his individual capacity alleging that he retaliated against Plaintiff by filing a false report will proceed;

(4)  The equal protection claim against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities will proceed;

(5)  The access-to-courts claim against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities will proceed; and

(6)  The Eighth Amendment claim against Defendant Domalewski in his individual capacity for deliberate indifference to Plaintiff's safety will proceed.

The **Clerk of Court** is **DIRECTED** to add LPN Domalewski as a Defendant to the docket of this case.

**IT IS FURTHER ORDERED** that within **30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint as to the following claims:

(1)  The claim brought under Title II of the ADA;

(2)  The retaliation claim regarding being placed in the Restricted Housing Unit; and

(3)  The Eighth Amendment claim regarding Plaintiff slipping and falling because he was denied the use of his walker and assistance.

**As to these claims, Plaintiff shall state what Defendants were involved in these alleged incidents, in what capacity he brings these claims against Defendants, and describe the specific facts surrounding how each Defendant allegedly violated his rights.**

The Clerk of Court is **DIRECTED** to place the instant case number and the word "Amended" on a § 1983 complaint form and send it, along with two summons forms, to Plaintiff for his completion.

**Plaintiff is WARNED that should he fail to file an amended complaint within 30 days, the Court will enter an Order dismissing the two claims Plaintiff is being allowed to amend for the reasons stated herein**.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.003