UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17CV-P531-RGJ

DONALD R. VIOLETT                                                             PLAINTIFF

v.

CASEY DOWDEN *et al.*                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donald R. Violett, a prisoner incarcerated at the Kentucky State Reformatory (KSR), filed the instant *pro se* action. After conducting an initial review of the matter pursuant to 28 U.S.C. § 1915A, the Court allowed some of Plaintiff's claims to proceed, including an Eighth Amendment claim against Defendant LPN Domalewski based on allegations that Domalewski placed Plaintiff on a back board, which he was not qualified to do, and dropped Plaintiff face first into the concrete floor causing him injuries. This matter is before the Court on three filings by Plaintiff seeking medical treatment, which the Court has construed as motions for preliminary injunction (DNs 28, 38, and 40).

**I.**

In the first filing (DN 28), Plaintiff filed an affidavit and "motion to compel proper medical exams/treatment by an expert doctor for [his] neck injuries." Plaintiff states that after the incident in which he was dropped, he was taken to Baptist Hospital in LaGrange, Kentucky, for examination. He asserts that since that time he has suffered from a neck injury and has experienced numbness in his fingers, hands, lower arms, and lower legs. He states, "Now Correct-Care Solution [CCS] has gave conflicting statements about the neck injury." He maintains that one healthcare provider told him that "the MRI and x-rays shows Plaintiff has a

pinched nerve in [his] neck causing the complete numbness of Plaintiff's fingers, hands, and lower arms as well as numbness to Plaintiff's lower legs." Plaintiff states that this medical provider "is no longer employed by CCS because he told the truth about Plaintiff's health problems." Plaintiff states that another CCS healthcare provider "alludes the Plaintiff has arthritis and that is the cause for the numbness in the Plaintiff's fingers, hands, lower arms, and lower legs." He further states that CCS physical therapy providers told him that he has a pinched nerve in his neck area which is causing the numbness and that he was started on physical therapy. Plaintiff requests the Court to issue an order "directing the named Defendants have proper medical exams and treatments (including surgery) by an expert Doctor so the Plaintiff can be relieved of severe pain and suffering the Plaintiff has had seen been dropped face first on to a concrete floor."

Defendants Casey Dowden, John Hall, and Anna Valentine filed a response to the motion (DN 29). They argue that Plaintiff admits that he has received medical treatment, that he is not entitled to see a doctor outside the prison for his injuries, and that he provides no evidence to support his claims. These Defendants attach no medical records to their response.

Plaintiff did not file a reply, but he did file a document which he captioned as an affidavit (DN 38), stating that he had a medical appointment scheduled for March 12, 2018, but that he did not find out about it until after the fact. He states, "Defendants claim Plaintiff is receiving 'medical services' which is not true. Defendants file false paper work, making false claims." (Emphasis by Plaintiff omitted.) Plaintiff also maintains that Nurse Barbara refused to discuss the missed appointment with him and later "called to say Plaintiff had lost all rights to use a walker and Plaintiff would have to sign up for sick call for Doctor Amos to consider if Plaintiff would get to use a walker again." Plaintiff states, "This is clear harassment on the part of

2

Defendants because Plaintiff needs a walker to walk anywhere he goes because of his injuries . . . and to help prevent further falls." (Emphasis by Plaintiff omitted.) Plaintiff alleges deliberate indifference on the part of Dr. Amos for taking away his walker "with approval" of Defendant Valentine. Plaintiff requests an order "for all Defendants to stop all harassment toward Plaintiff and Plaintiff receive a walker or wheelchair to be able to walk and get around."

In Plaintiff's third filing (DN 40), he states that he "is in great serious pain" from the numbness in his extremities and that "KSR physical therapy has stopped treatment as the physical therapy treatments were not helping the Plaintiff and KSR medical will not see the Plaintiff or send the Plaintiff to an outside hospital or expert to find the problem with Plaintiff having numbness in fingers, hands, and lower arms."

By Memorandum and Order (DN 47) entered June 4, 2018, the Court ordered all Defendants to file a fully supported response to the motions for preliminary injunction within 14 days. The Court directed that the response must specifically address Plaintiff's allegations that he is currently being denied medical treatment for his injuries.

Defendants Dowden, Hall, Valentine, Teresa Turner, Sgt. Lefebvre, and Sgt. Royalty (the "KSR Defendants") filed a response (DN 48). They argue that they are not medical providers and have no authority to order that Plaintiff be provided medical care, or more specifically, to order that he be seen for medical treatment outside the prison. They assert that Defendant Valentine, a Deputy Warden, reviewed a "Patient Summary," which they attach, showing that Plaintiff has had 41 medical appointments in the last six months. They state, "It appears that Plaintiff has rarely gone a week without medical attention and the summary shows that he already has additional appointments scheduled in June, July and August." The KSR Defendants also point to Plaintiff's medical records which show that while the use of his walker

3

was discontinued on March 13, 2018, he was issued another walker on March 15, 2018. They state that the "Patient Summary" reflects that Plaintiff received physical therapy through April 19, 2018. They argue, "The Plaintiff merely disagrees with the medical decision, without offering any medical evidence that the decision is wrong." These Defendants further maintain, "The Plaintiff admits he is receiving medical treatment from multiple healthcare providers, but objects to their opinions as to the cause of numbness in his extremities."

Plaintiff filed a reply (DN 49), in which he states that some of the medical appointments described by Defendants were for physical therapy and that "the physical therapy was not helping the Plaintiff with his numbness of the fingers, hands, lower arms and, lower legs . . . ." He again describes the missed medical clinic appointment which he described in his prior affidavit.[1] He further states the following:

> Plaintiff has not received any medical treatment since his injury in September 2018, and, setting appointments then canceling those appointments is not medical treatments and the Defendants have not produced sufficient medical records as this Court so ordered June 4, 2018. The Plaintiff is complaining to the proper staff about the lack of medical treatment and those staff is investigating why he Plaintiff is not receiving prompt medical treatment and, the Defendants has supplied false and misleading information to this Court, which requires a court hearing so the Plaintiff can present his evidence, witnesses, and proof he is not receiving prompt or proper medical treatment. If nurse Barbara decides that she does not want Dorm 12 clinic to see you, nurse Barbara will file false information and cancel appointments.

Plaintiff attaches to his reply a document he captions as an "Affidavit." He again describes the missed appointment. Further, he asserts that he has "never received any medical treatment from Dorm 12 clinic for numbness in my fingers, hands and lower arms as well as lower legs." He states that Dorm 12 cannot treat him for the numbness or "prescribe any thing for pain . . . ." He states, "Anna Valentine override any medical decisions is why I am not

---

[1] In the instant reply, Plaintiff states that the missed medical appointment occurred April 13, 2018. However, in his prior affidavit, he describes the missed appointment to have taken place on March 13, 2018. The medical records show that the missed appointment was on March 13, 2018.

4

receiving my medical treatment because she knows her staff hurt me in September 2017 and for Dorm 12 Clinic to treat or prescribe something for pain will admit they injuried me." He also filed a copy of a letter he sent to a Health Services Administrator describing his medical ailments and provides handwritten comments on the "Patient Summary" attached to Defendants' response. He also complains that his housing location is not close to prison services and attaches a handwritten map of his housing area.

Defendant LPN Domalewski, apparently an employee of CCS, also filed a response to the motions for preliminary injunction. He largely reiterates the arguments made by the KSR Defendants. In addition, he attaches medical records of Plaintiff, including an "Issue of Durable Medical Equipment" form showing that Plaintiff was issued a rolling walker on March 15, 2018. He also attaches medical records from medical appointments concerning other ailments on the following dates in 2018: May 9, May 14, May 18, May 22, June 7, and June 20. Defendant Domalewski also attaches a medical record for a sick call appointment on May 7, 2018, which under the heading "Assessment" states as follows:

> I/M came to sick call this AM with c/o of chronic numbness and pain to arms and hands. I/M was in physical therapy and finished in April. States pain is 6 to 7 on scale of 1-10 most of the time. I/m states he takes no medications for pain. I/M uses walker, states he can feel hands on walking alot r/t numbness. I/m states he had fall last September which caused his issues with arms and hands. I/m also c/o's of weakness to lower Ext[re]mities when walking.

The medical record states under the heading "Plan": "Notes: I/m requesting follow-up with pro[vi]der, states physical therapy didn't help much. I/m has appt. 6/4 for CC and can address chronic pain and numbness with provider at that time." Defendant Domalewski also attaches Plaintiff's medical record from a Chronic Care Nurse Visit on June 6, 2018. However, it is unclear from this record what treatment was given on that date.

Plaintiff filed a reply to Defendant Domalewski's response in which he also moves to strike the filing as frivolous. He argues that Defendant Domalewski "has supplied this Court with frivolous information, not submitting any medical records to support his malicious claims." Plaintiff again takes issue with Defendants' contention that he has had 41 medical appointments so far this year because he claims some of the medical appointments were for unrelated ailments, such as "OPS (psycho doctor)," eye clinic, and physical therapy. He states, "Dr. Manning saw Plaintiff briefly on June 17, 2018 after the Plaintiff was released from the University of Louisville Hospital on June 15, 2018. Plaintiff was placed in the Nursing Care Facility (NCF) at KSR for further problems with numbness to fingers, hands, lower arms and lower legs." Plaintiff also complains of continuing medical ailments.

**III.**

At the outset, in his affidavit (DN 38) and subsequent filings, Plaintiff repeatedly argues that Nurse Barbara harassed him, caused him to miss a medical appointment, and, along with Dr. Amos, caused him to lose his walker. These are not claims Plaintiff alleged in his complaint or amended complaint. By Memorandum and Order (DN 46) entered June 4, 2018, the Court gave Plaintiff the opportunity to file a motion to supplement his complaint and amendment with the claims stated in his affidavit within 30 days. The Court warned Plaintiff that if he failed to comply with the Order within the allotted time he would not be permitted to assert those claims in this action. More than 30 days have passed, and Plaintiff did not file a motion to supplement the complaint. Therefore, the claims stated in Plaintiff's affidavit and repeated in subsequent filings are not part of this action, and the Court need not address them herein. If Plaintiff wishes to assert those claims, he must file a separate action. The Court notes that to the extent he

requested to be issued a walker or wheelchair, the request is now moot since he was given another walker on March 15, 2018.

Turning to Plaintiff's motions for preliminary injunction, preliminary injunctive relief is an extraordinary remedy "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to grant a preliminary injunction, "'the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest.'" *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001)).

Although no single factor is controlling when determining whether a preliminary injunction should be issued, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."); *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Plaintiff has not shown that he is likely to prevail on the merits. To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976));

*Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). To rise to the level of an Eighth Amendment violation, a prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837-38. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id*. (citations omitted). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).

The "Patient Summary" attached to the KSR Defendant's response shows that Plaintiff had a physical therapy consultation for "Cervicalgia" on February 19, 2018, and received physical therapy from February 20 to April 19, 2018. Plaintiff does not dispute that the physical therapy was intended to treat his neck and numbness problems, although it was apparently unsuccessful. Further, the medical record attached to Defendant Domalewski's response for May 7, 2018, shows that Plaintiff was seen by medical personnel in a sick call appointment for his complaints of numbness in his extremities. He was told to address his chronic pain and numbness at his next chronic care appointment. Moreover, in Plaintiff's reply to Defendant Domalewski's response filed on June 26, 2018, he states, "Plaintiff was placed in the Nursing

8

Care Facility (NCF) at KSR for further problems with numbness to fingers, hands, lower arms and lower legs."

Based on Plaintiff's own assertions and the medical records provided by Defendants, it is clear that Plaintiff has been seen by KSR medical personnel for his complaints of neck pain and numbness in his extremities over a period of months and that Plaintiff's dispute is with the adequacy of the treatment. While it is evident that the treatment has not yet alleviated his numbness problems, Plaintiff fails to show that Defendants knew of and disregarded an excessive risk to inmate health or safety. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."). While Plaintiff disagrees with the course of treatment and requests to see an outside specialist, the Court will not second guess the medical judgments of the KSR medical personnel and finds that Plaintiff's allegations do not give rise to a constitutional violation. Therefore, Plaintiff has failed to establish a likelihood of success on the merits.

Furthermore, to meet the irreparable injury component of a motion for preliminary injunctive relief, a movant must show "'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney*, 443 F.3d at 552. Plaintiff has failed to show that his need for the requested treatment is actual and imminent. In fact, he states that he is currently housed in the Nursing Care Facility for his numbness problem. Therefore, it is evident that Plaintiff is currently receiving care for his complaints of numbness.

The third and fourth elements also weigh against granting preliminary injunctive relief. It is generally in the best interests of all if courts refrain from becoming involved in day-to-day prison operations. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 U.S. Dist. LEXIS 126890, at *19 (E. D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motions for preliminary injunctive relief (DNs 28, 38, and 40) are **DENIED**.

In addition, in regards to Plaintiff's motion to strike Defendant Domalewski's response, while Plaintiff disputes the characterization of his medical records, he fails to show that the response contains anything other than legal argument. Therefore, there is no basis for striking the response. Accordingly, **IT IS ORDERED** that Plaintiff's motion to strike Defendant Domalewski's response (DN 51) is **DENIED**.

Date:

cc: Plaintiff, *pro se*
     Counsel of record
4415.010