UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


DONALD R. VIOLETT                                                      Plaintiff

v.                                              Civil Action No. 3:17-CV-P531-RGJ

CASEY DOWDEN, *et al.*                                              Defendants

* * * * *

## MEMORANDUM OPINION AND ORDER

This is a 42 U.S.C. § 1983 action filed by *pro se* Plaintiff Donald R. Violett. Defendants Casey Dowden, John Hall, Teresa Turner, Christopher Lefebvre, Jeffrey Royalty, and Anna Valentine (the Kentucky Department of Corrections (KDOC) Defendants) move for summary judgment. (DN 135). They rely on their previous motion for summary judgment and memorandum of law (DN 102), which the Court administratively remanded from the Court's docket by prior Order (DN 104). The KDOC Defendants' motion for summary judgment (DN 102) is **REINSTATED** to the Court's active docket. Defendant LPN Charles Domalewski also moves for summary judgment (DN 136).

Plaintiff did not respond to the KDOC Defendants' motion for summary judgment despite being ordered to do so (DN 149). He did respond to Defendant Domalewski's summary judgment motion (DN 152), and Defendant Domalewski replied (DN 156).

Plaintiff also moves for summary judgment (DN 140). The KDOC Defendants responded (DN 142), and Defendant Domalewski responded (DN 145). Plaintiff replied to Defendant Domalewski's response (DN 146).

For the reasons below, Defendants' motions for summary judgment are **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED**.

# I. SUMMARY OF ALLEGATIONS SURVIVING INITIAL REVIEW

Plaintiff is an inmate at the Kentucky State Reformatory (KSR). Plaintiff claims KSR's medical department designated him "to be handicap, having to use a rolling walker, at all times during the incidents" about which he complains. (DN 1). According to Plaintiff, when he tried to report to the KSR legal office on April 6, 2016, the "designated handicap door was locked." Plaintiff had to enlist someone to get a KSR staff member to unlock the door "so he and other handicap people could enter the building." The staff member who unlocked the door informed Plaintiff that she had been told to keep the door locked and that Plaintiff and others needed to "use the regular door to enter the building." Plaintiff stated that soon after, he tried to exit the building to go to the canteen. According to Plaintiff, when he tried to do so, the "designated handicap door" was locked, and he needed to get a staff member to open the door so he could exit.

Plaintiff states that on April 7, 2016, he was called to the legal office and told that he "was released from his work assignment program because the Plaintiff complained about the designated handicap door being locked on April 6, 2016 four [4] times." Plaintiff stated that when he tried to file a grievance about the locking of the handicapped door on this same date, Defendant Turner "said she would issue a disciplinary report against [him] if he filed a grievance, as she had decided the designated handicap door was to stay locked at all times." Plaintiff maintained that he could not file a grievance until April 21, 2016. According to Plaintiff, on April 22, 2016, a disciplinary report was issued against him for using "disrespectful[] language toward staff when complaining about the designated handicap door being locked on April 6, 2016." The complaint states that the disciplinary report was dismissed on April 24, 2016.

Plaintiff alleged that Defendants Turner and Hall barred him "from having access to the legal library so the plaintiff could work on his criminal case and prepare legal pleadings to file a

collateral attack against Plaintiff's illegal conviction, causing the Plaintiff to miss deadline . . . ." Plaintiff stated that Defendants Turner and Dowden "remove[d] specific computers from the KSR legal library so the Plaintiff could not prepare any typed legal pleadings collaterally attacking his criminal conviction . . . ."  According to the complaint, in June 2017, all legal work he had stored in a certain computer was destroyed so Plaintiff could not have copies, yet Defendants "permitted others to type, copy, their prepared legal pleadings and only the Plaintiff is not allowed to type on computers, because the Plaintiff is handicapped with mental illness issues."  Plaintiff asserted that Defendants were trying to stop sex offenders "from preparing legal pleadings while non-sex offenders enjoy the right to use program computers to prepare, type, copy legal work and this has caused irreparable injuries to the Plaintiff."

Plaintiff asserted that "[s]ex offenders are considered to have mental health issues." Plaintiff stated that they receive mental health treatment and, if convicted after 1998, must complete the Sex Offender Treatment Program.  Plaintiff alleged that Defendants do not "give a sex offender the same legal aid assistance as a non-sex offender."  Plaintiff also stated that Defendants have "only hired non handicap people to work in the assigned programs as Legal Aides, grievance Aides, [and] legal clerks."  Plaintiff alleged that Defendants are discriminating against him because he is handicapped by not allowing him to participate in state-run programs. Plaintiff alleged that Defendants retaliated against him because he exercised his right to complain "that handicap people have a right to access the building where state run programs are conducted, and the locking of the designated handicap door, to the legal office and legal library continues."

In Plaintiff's first amended complaint (DN 7), he stated that "Defendants and others retaliated [against him] by locking him up in Restricted Housing Unit [RHU] (the Hole) and taking the Plaintiff's walker away so he could not have any assisted way to walk or get around."  Plaintiff

stated that Defendants placed him in restricted housing on September 17, 2017. According to Plaintiff, the toilet in his RHU cell did not work, and he could not "use the toilet or clean himself" until September 19, 2017, when he was removed from the restricted housing cell "so staff could dry up the rain water and sewer water that was on the cell floor." Plaintiff stated that when he was instructed to return to his cell, he attempted to do so without the help of a walker or a staff member, and he "fell in water, hitting his head, elbow, and hip on steel bars and concrete floor." Plaintiff contended that this was an "act of delirate indifference . . . ."

According to Plaintiff, KSR staff called Correct Care Solutions (CCS) "to give aid to Plaintiff because [he] was knocked out and bleeding from his right elbow." Plaintiff stated that CCS staff was unable to put him in a wheelchair because he was "knocked-out and hurt in his back." Plaintiff asserted that the door was too small for a wheelchair. According to Plaintiff, this was "[a]nother A.D.A. violation." Plaintiff continued by stating that CCS staff placed him on a back board, but dropped him back onto the concrete floor causing him further injury. Plaintiff states that KSR staff then called the "KSR medical ambulance," and transported Plaintiff to the hospital "[f]or proper medical care."

In Plaintiff's second amendment to the complaint (DN 11), he alleges Defendant Domalewski dropped him "face-first into the concrete floor while Plaintiff was belly-handicapped and strapped to a back board, causing a neck, elbow and hip injury to the Plaintiff." Plaintiff continues,

> Now, in retaliation for filing this complaint, one of the [CCS] employees has filed a false report by not telling the truth why Plaintiff was injured. LPN Domalewski is not qualified to state if Plaintiff has internal injuries to the Plaintiff's neck, elbow or hip after LPN Domalewski did not report he dropped the Plaintiff while Plaintiff was strapped to the back board. KSR staff witnessed the deliberate indifference to the Plaintiff's medical care, and KSR-EMT staff told LPN Domalewski he was not qualified to move or try to transport the Plaintiff on a back board.

In the third amended complaint (DN 16), Plaintiff asserts that Defendants Lefebvre and Royalty violated Title II of the ADA. He states that he "was designated handicap, having to use a rolling walker, and was denied access to the walker, while in RHU 5-R-11 because the gate is too small for walkers and wheelchairs to go through and named Defendants knew all handicap people were suppose to be housed in RHU 1." Plaintiff asserts that while housed in the RHU for eleven days, his cell had no running water, no working plumbing, and no electricity for Plaintiff to use his CPAP machine.

Upon initial review of the complaint and amendments under 28 U.S.C. § 1915A, the Court allowed the following retaliation claims to proceed: (1) a retaliation claim against Defendant Turner in her individual capacity based on Plaintiff's allegation that she filed a disciplinary report against him in retaliation for filing a grievance about the handicapped door being locked; (2) retaliation claims against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities based on Plaintiff's allegation that these Defendants barred him from access to the law library and use of the computers to prepare legal documents to collaterally attack his criminal conviction in retaliation for complaining about the handicapped door being locked; and (3) a retaliation claim against Defendant Domalewski in his individual capacity for filing a false report that failed to state that he had dropped Plaintiff off the back board in retaliation for filing this action.

The Court also allowed equal-protection claims to proceed against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities. These claims stemmed from Plaintiff's allegations that Defendants allowed non-sex offenders to access the law library and computers to prepare legal documents, but that he, a sex offender, which he described as a mental illness, was denied access to the law library and computers.

And the Court allowed claims for denial of access to the courts to proceed against Defendants Dowden, Turner, Hall, and Valentine in their individual capacities based on Plaintiff's allegations that they denied him access to the law library and computers to draft legal documents to prepare a collateral attack on his criminal conviction, which caused him to miss a deadline in his case.

The Court also allowed an Eighth Amendment claim to proceed against Defendant Domalewski in his individual capacity based on the alleged incident in which Defendant Domalewski placed Plaintiff on a back board and dropped Plaintiff on to the concrete floor causing injury to his neck, elbow, and hip.

Claims under Title II of the ADA were also allowed to proceed against Defendants Royalty and Lefebvre in their official capacities based on Plaintiff's allegations concerning access to his walker while in the RHU.

Finally, the Court allowed Plaintiff's Eighth Amendment claim to proceed against Defendant Valentine in her individual capacity based on Plaintiff's allegations that she was involved in placing him in the RHU for eleven days where had no running water, no working plumbing, and no electricity for Plaintiff to use his CPAP machine.

The KDOC Defendants argue that all of Plaintiff's claims against them must be dismissed because he failed to exhaust his administrative remedies before suing. They also argue that the retaliation claims, equal protection claims, and denial-of-access-to-courts claims are barred by the statute of limitations. They maintain that all the claims must be dismissed on their merits and that they are entitled to qualified immunity.

In Defendant Domalewski's motion for summary judgment, he argues that Plaintiff's claims against him must be dismissed for failure to exhaust administrative remedies. He also

argues that the Eighth Amendment and retaliation claims against him should be dismissed on their merits.

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of proving the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by showing that no evidence supports an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id*. Once the moving party shows this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential

element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

## III. ANALYSIS

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust all available administrative remedies before commencing an action related to prison conditions. The statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has made clear: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). To meet this requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). To exhaust a claim, a prisoner must proceed through all the steps of a prison's administrative process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). That said, an inmate need only exhaust those remedies that are "available"; if an administrative remedy "is not capable of use to obtain relief," § 1997e will not act as a barrier to suit. *Ross v. Blake*, __ U.S.__, 136 S. Ct. 1850 (2016). An inmate must establish affirmative efforts to comply with an administrative procedure before claiming that he is excused from exhausting that procedure based on its unavailability. *Napier v. Laurel Cty.*, 636 F.3d 218, 223 (6th Cir. 2011).

### *Claims against the KDOC Defendants*

The Court looks to "the prison grievance process itself" to determine whether an inmate has properly exhausted. *Jones,* 549 U.S. at 218. The KDOC Inmate Grievance Procedure, Corrections Policies, and Procedures (CPP) 14.6, provides that "[a] grievable issue shall include any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue" (DN 102-8, CPP 14.6, ¶ II(B)). It also provides that if an inmate wishes to file a grievance, he must do so in writing, and the grievance must include "all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with . . . " (*Id.*, CPP 14.6, ¶ II(J)(1)(a)(5)). A grievance proceeds first to an informal resolution stage (*Id.*, CPP 14.6, ¶ II(J)(1)(b)(1)). If the inmate is not satisfied with the outcome of the informal resolution step, the inmate must request review by the Grievance Committee (*Id.*, CPP 14.6 ¶ II(J)(1)(b)(8)). If he is unsatisfied with the Grievance Committee decision, the inmate must appeal his grievance to the Warden (*Id.*, CPP 14.6 ¶ II(J)(2)(j). If unsatisfied with the Warden's decision, and to fully exhaust the grievance process, the inmate must appeal to the Commissioner of KDOC (*Id.*, CPP 14.6 ¶ II(J)(3)(c)).

The KDOC Defendants attach the affidavit of John Dunn, the KDOC Ombudsman (DN 102-4). Dunn asserts that he oversees the grievance program for the KDOC and supervises grievance coordinators at all KDOC institutions. He states that he also receives, reviews, and maintains records of all inmate grievances appealed to the KDOC Commissioner under CPP 14.6. Dunn avers, "I have examined the grievance records of inmate Donald Violett, #114842 and I have found 5 grievances under CPP 14.6 that the inmate has appealed to full exhaustion from 2016 to

the present" (*Id.*)  He describes the five grievances which Plaintiff fully exhausted in his affidavit as follows:

[1] Grievance Number #16-337 claims that a handicapped door to the "school building" was locked when he tried to enter at 8:17 a.m. on 4/6/16.  The appeal to the Commissioner, claiming that Teresa Turner had either locked the door or caused staff to lock it during that time, was answered with a final decision on June 13, 2016.  The inmate was informed that the door was not supposed to open until 8:30 a.m.

[2] Grievance #16-658 claims that Teresa Turner and John Hall had removed the inmate from his job as a Legal Aid at KSR and he was not being permitted to act as a legal Aid for other inmates. The appeal to the Commissioner was answered with a final decision on August 25, 2016.  The inmate was informed that staff was correct to deny him the ability to assist other inmates with legal work, since he was no longer a registered Legal Aid.

[3] Grievance #16-1022 complained that another inmate had stolen inmate Violett's account number and used it to purchase $19.81 worth of canteen items and requested that the money be refunded and that staff do a better job of preventing ID theft.  The appeal to the Commissioner was answered with a final decision on November 16, 2016.

[4]  Grievance #18-189 claims that the inmate [was] unable to get his canteen bag order on January 24, 2018, because his walker would not fit between the rails where he was required to walk and the inmate requested that the rails be made wider. The appeal to the Commissioner was answered with a final decision on March 16, 2018 and informed the inmate that a handicapped line at the canteen was available for him to use.

[5] Grievance #18-201 the inmate again raised the same claim he had been unable to get his canteen bag order on January 24, 2018 but said that the issue he was appealing was that Keefe employee Spring Gorbandt had allegedly used discriminatory language toward him. The appeal to the Commissioner was answered with a final decision on April 4, 2018 and informed the inmate that an investigation had been conducted and it was determined that the canteen employee did not make any derogatory comments.

(*Id.*)

None of the five grievances mention KDOC Defendants Valentine, Dowden, Domalewski, Lefebvre, or Royalty or any claim against them.  Defendants thus contend that Plaintiff failed to fully exhaust any claim against these five Defendants, and the claims against them must be

dismissed for failure to exhaust. Plaintiff did not respond to the KDOC Defendants' motion for summary judgment or otherwise show that Dunn's description of Plaintiff's fully exhausted grievances was incorrect. Plaintiff attached only two grievances to his complaint and amendments, Grievance Numbers 16-0337 and 16-0658, which pertain only to Defendants Turner and Hall. As a result, Plaintiff failed to fully exhaust his claims against KDOC Defendants Valentine, Dowden, Domalewski, Lefebvre, or Royalty, and the Court will grant the KDOC Defendants' motion for summary judgment for these Defendants.

As for the fully exhausted grievances against Defendants Turner and Hall, the Court looks to Plaintiff's claims which survived initial review. First, Plaintiff alleges a retaliation claim against Defendant Turner for filing a disciplinary report against him in retaliation for filing a grievance about the handicapped door being locked. Second, Plaintiff's retaliation claim against Defendants Turner and Hall based on Plaintiff's allegation that these Defendants barred him from access to the law library and use of the computers to prepare legal documents in retaliation for complaining about the handicapped door being locked. Third, Plaintiff's equal-protection claim against Defendants Turner and Hall alleging that they allowed non-sex offenders to access the law library and computers to prepare legal documents, but that he, a sex offender, was denied access to the law library and computers. And finally, Plaintiff's claim against Defendants Turner and Hall for denial of access to the courts as he alleges they denied him access to the law library and computers to draft legal documents to prepare a collateral attack on his criminal conviction.

As stated above, Plaintiff attached Grievance Numbers 16-0337 and 16-0658 to his complaint. In Grievance Number 16-0337, as the "Brief Statement of the Problem," Plaintiff stated the following:

On 4/6/16 I tried to enter the school building only to find the handicap door locked at 8:00 am. I had to get another person to go in through the other door where therre were steps to get C/O Leach to unlock the designated handicap door so I could enter that building. I signed the log book, reported to my work station and typed out some legal work. When C/O Leach called Dorm 11 to go to the canteen at 8:17 am I tried to exit the building only to find the designated handicap door locked. I asked C/O Leach to unlock the handicap door so I could exit the building when she said the door was to stay locked. Brian Ward has given me a direct order to not go up and down the steps, to get in and out of the school building. I tried to explain under ADA standards and Mr. Hillebrandt, the fire and safety coordinator, orders that handicap door was to stay unlocked so a handicap person with a wheelchair or walker could exit and enter that building. When I returned after 9:30 am from going to canteen the designated . . . handicap door was locked again. I had to send another person in through the regular door to get the designated handicap door unlocked so I could return to work. C/O Leach got upset and stated again the door was to be locked at all times. When I went to leave at 11:00 am to go eat the door was locked and I had to get C/O Leach to unlock it so I could exit the building.

In Grievance Number 16-0658, as the "Brief Statement of the Problem," Plaintiff stated the following:

On 6/27/2016, Teresa Turner and John Hall gave me an order I could not assist anyone in the preparation of legal papers nor can I give legal advice to other people as I am not assigned legal aide and only assigned legal aides can prepare legal papers for other people and give legal advice to others. This is a violation of CPP 14.4 - 11 - 14 - 6.

Neither of the fully exhausted grievances refers to retaliation, an equal protection violation or discrimination against sex offenders, denial of access to the law library or legal resources, or denial of access to the courts.

As for Grievance Number 16-0337, Plaintiff did describe an incident on April 6, 2016, when the handicapped door to the KSR legal office was locked. (DN 1). Even so, the Court dismissed the claim for the locked handicapped door upon initial review under 28 U.S.C. § 1915A. *See* DN 12. The claims that survived initial review pertaining to the handicapped door are the *retaliation* claims against Defendants Turner and Hall based on allegations that they retaliated against Plaintiff after he made complaints about the handicapped door. The KDOC grievance

procedures require that the grievance must include "all aspects of the issue and identify all individuals . . . so that problems concerning the issue or individuals may be dealt with . . . " (*Id.*, CPP 14.6, ¶ II(J)(1)(a)(5)). Plaintiff makes no reference in Grievance Number 16-0337 to any alleged retaliatory act taken against him because of his complaints about the handicapped door. While the Sixth Circuit does "not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory," *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006), "a grievance must provide notice of the problem at hand." *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 U.S. Dist. LEXIS 621, at *15 (E.D. Ky. Jan. 4, 2011) (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). Plaintiff's grievance failed to put prison officials on notice that Defendant Turner or Hall took any action against Plaintiff after he complained about the locked door. *See Johnson v. Woodford*, No. CV 04-05995-GHK, 2010 U.S. Dist. LEXIS 108553, at *12 (C.D. Cal. April 20, 2010) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim."). As a result, Grievance Number 16-0337 does not exhaust his claims.

In Grievance Number 16-0658, Plaintiff complained that Defendants Turner and Hall ordered that he not be allowed to help *other* inmates prepare legal papers. Following initial review, the Court allowed Plaintiff's retaliation and access-to-courts claim to proceed based on allegations that Defendants Turner and Hall barred him from access to the law library and use of the computers to prepare legal documents to collaterally attack *his own* criminal conviction, not to prepare legal papers for other inmates. For that reason, Plaintiff's Grievance Number 16-0685 exhausts none of his claims against Defendants Turner and Hall.

Once again, Plaintiff did not respond to the KDOC Defendants' motion for summary judgment. That said, he filed a pretrial memorandum (DN 136) in which he addressed grievances as follows:

> Plaintiff [Violett] proposes to prove in the trial procedure defendant Dowden used her Positi[]on, as legal aide/grievance coordinator to destroy/conceal grievances, filed by Mr. Violett and others, to inmates could not exhaust their state remedies to pass into Federal Court, and, used her position to stop or delay Mr. Violett from preparing his legal pleadings in a timely matter, causing Mr. Violett to miss court deadlines. Mr. Violett will introduce testimony from a Unit Administer, who tell how he found nearly 125 grievances, either not processed or not complete, his in Dowden's desk drawer which denied Mr. Violett [and others] right to exhaust his administrative remedies. This caused the exhaustion requirements to file in Federal Court waived.

Plaintiff attached an affidavit to the pretrial memorandum stating, "I am being denied the same rights as other inmates enjoy, such as: access to computers (Word processor) to prepare and file timely legal pleadings; my grievances being put in a desk drawer and not being processed or lost . . ."

Even if Plaintiff signed the pretrial memorandum under penalty of perjury and it could be construed as an affidavit, "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "[I]n order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere 'scintilla of evidence' is insufficient." *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). Plaintiff's allegation that Defendant Dowden hid or destroyed grievance records are vague and conclusory. He offers no evidence to support it, does not state what grievance he sought to file or whether it was relevant to his claims, and does not even state when Defendant Dowden's actions allegedly occurred. The unsupported allegations cannot show that the grievance process was not

available to him or futile. *See, e.g.*, *Belser v. James*, No. 16-2578, 2017 U.S. App. LEXIS 23218, at *5 (6th Cir. 2017) (holding that the plaintiff's generalized statements regarding his inability to access the grievance process were "insufficient to create a genuine dispute of material fact as to whether the grievance process was available to him"); *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004) ("[Plaintiff]'s bald assertion that [the grievance coordinator] refused to give him grievance forms is not enough to excuse the complete absence of evidence that he attempted to exhaust his administrative remedies for the many claims he raised in his district court complaint."); *Moore v. Shaw*, No. 5:13CV130, 2015 U.S. Dist. LEXIS 35081, at *6 (N.D. W.Va. Mar. 20, 2015) ("[The plaintiff] bears the burden of demonstrating the futility of administrative review.") (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)).

Plaintiff also referenced filing a grievance in his complaint, stating as follows:

The Plaintiff asserts on April 7, 2016, when he tried to file a grievance over the locking of the designated handicap door, and him being released from his work assignment program, Teresa Turner said she would issue a disciplinary report against the Plaintiff if he filed a grievance, as she had decided the designated handicap door was to stay locked at all times.

The Plaintiff asserts it took until April 21, 2016 before the grievance aide Craig Lindsey would permit the Plaintiff sign the grievance, and on April 22, 2016, a disciplinary report was issued against the Plaintiff, saying the Plaintiff had use disrespectfully language toward staff when complaining about the designated handicap door being locked on April 6, 2016. [] The Plaintiff asserts on April 24, 2016 the disciplinary report was dismissed . . . .

These allegations are also not sufficient to show that the grievance process was unavailable to Plaintiff. Construing Plaintiff's allegations as true, while Defendant Turner told him that she would file a disciplinary report if he filed a grievance about the locked handicapped door, Plaintiff did in fact file such a grievance and was able to fully exhaust the grievance. The complaint makes no allegation that Defendant Turner or any other Defendant prevented him from filing a grievance about the alleged retaliation he suffered from complaining about the handicapped door. Nor does

he allege that he was prevented from filing a grievance for any of the other claims that survived initial review.

For these reasons, the Court finds that Plaintiff failed to fully exhaust his administrative remedies concerning his claims against KDOC Defendants Hall and Turner, and the motion for summary judgment will be granted as to these Defendants.

### *Claims against Defendant Domalewski*

The Court allowed two claims to proceed against Defendant Domalewski—a retaliation claim based on Plaintiff's allegation that he filed a false report that failed to state that he had dropped Plaintiff off the back board in retaliation for filing this action and an Eighth Amendment claim based on an alleged incident in which Defendant Domalewski placed Plaintiff on a back board and dropped Plaintiff on to the concrete floor causing him injury.

As for healthcare grievances, the inmate must submit the grievance in writing and "include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with . . . " (DN 136-3, CPP 14.6 ¶ II(K)(1)(a)(4)). Then the Grievance Coordinator forwards the health care grievance to the Institutional Health Authority which attempts an informal resolution of the grievance (*Id.*, CPP 14.6 ¶ II(K)(1)(b)(2)). If the grievance cannot be resolved informally, the grievant may request review by the Health Care Grievance Committee (*Id.*, CPP 14.6 ¶ II(K)(1)(c)). If the inmate is not satisfied with the committee's recommendation, and to fully exhaust the grievance process, he must appeal the grievance for final administrative review by the Medical Director (*Id.*, CPP 14.6 ¶ II(K)(2)(f)).

Defendant Domalewski attaches certified copies of Plaintiff's grievance records from 2016 to November 26, 2018. None of the grievances concern any claim against Defendant Domalewski.

Plaintiff filed a response to Defendant Domalewski's motion for summary judgment. He does not address, much less dispute, Defendant Domalewski's assertion that he failed to exhaust his administrative remedies with respect to his claims against him.

As a result, the Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendant Domalewski, and the motion for summary judgment will be granted.

## IV. ORDER

For all these reasons, **IT IS ORDERED** that the motion for summary judgment (DN 102) is **REINSTATED** to the Court's active docket.

**IT IS FURTHER ORDERED** that the motions for summary judgment by the KDOC Defendants (DNs 102 and 135) and by Defendant Domalewski (DN 136) are **GRANTED**.

The Court having determined that Defendants are entitled to summary judgment, **IT IS FINALLY ORDERED** that Plaintiff's motion for summary judgment (DN 140) is **DENIED**.

The Court will enter a separate Judgment dismissing the case.

Date: March 16, 2020

Rebecca Grady Jennings, District Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
A961.010